UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMANUEL SHAWN COATES,

       Plaintiff,                    Case No. 12-15529

v.                                        Honorable Patrick J. Duggan

JEMER JURADO, SUBRINA           Magistrate Judge Paul J. Komives
AIKEN, and CORIZON,
INCORPORATED,

       Defendants.
_____/

## OPINION AND ORDER

On December 17, 2012, Plaintiff Emanuel Coates, a state prisoner, instituted this *pro se* civil rights action pursuant to 28 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"). Nurse Practitioner Jemer Jurado, Registered Nurse Subrina Aiken, and Corizon, Inc. are named as defendants. Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to provide him with a replacement hearing aid. Plaintiff further contends that Defendants violated Title II of the ADA. On April 12, 2013, Defendant Aiken filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56. Soon thereafter, the Court referred the lawsuit to Magistrate Judge Paul J. Komives for all pretrial matters proceedings, including a hearing and determination of all non-dispositive

matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently before the Court are Plaintiff's objections to two Report and Recommendations ("R&R") filed in connection with Defendant Aiken's Motion.  For the reasons stated herein, the Court grants Aiken's Motion for Summary Judgment and dismisses Aiken from this action.

## I.    FACTUAL[1] AND PROCEDURAL BACKGROUND

### A.    Facts Regarding Plaintiff's Hearing Loss

Sometime in 1996, Plaintiff began noticing that his ability to hear was deteriorating but did not seek treatment because he lacked health insurance.  (Am. Compl. ¶ 8.)  In 1997, while incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan, Plaintiff's diminished hearing began deleteriously impacting his daily activities: he had difficulty communicating with prison guards and inmates and withdrew from Michigan Department of Corrections ("MDOC") sponsored programs because he could not hear his instructors.  (*Id.* at ¶ 9.)  Soon thereafter, Plaintiff sought medical attention from health care services.  (*Id.*)

---

[1] The pertinent factual allegations have been drawn from Plaintiff's First Amended Complaint, (ECF No. 52), which Magistrate Judge Komives allowed Plaintiff to file pursuant to an Order dated August 8, 2013.  (ECF No. 40.)  The facts are limited to those pertinent to the instant motion and, therefore, focus on Defendant Aiken.

In early September of 1997, Plaintiff was taken to the Jackson Hearing Clinic at Duane Waters Hospital in Jackson, Michigan. (*Id.* at ¶ 10.) An audiogram performed by an audiologist revealed that Plaintiff suffered from significant hearing loss and would benefit from a hearing aid device. (*Id.*) Plaintiff was approved for the hearing aid and an MDOC health contractor provided Plaintiff with one. (*Id.*) The hearing aid "enabled [Plaintiff] to maintain some degree of safety and security in the" prison environment. (*Id.* at ¶ 11.) In April of 2008, Plaintiff saw an audiologist and received a new hearing aid because his hearing ability had eroded further. (*Id.* at ¶¶ 12-13.)

From September 1997 until Plaintiff's release on parole on May 4, 2011, Plaintiff was provided with a hearing aid and batteries and medical staff monitored his hearing loss. (*Id.* at ¶ 14.) Sometime during the nine months that Plaintiff was on parole, however, he lost his hearing aid. (*Id.* at ¶ 15.) Despite efforts to obtain a replacement before returning to MDOC custody for violating his parole, Plaintiff was unsuccessful. (*Id.* at ¶ 16.)

Upon returning to state custody, Plaintiff was placed at a reception center in Jackson, Michigan. (*Id.*) He informed a health care provider at this facility of his need for a hearing aid and the provider submitted "a consult" for an audiogram. (*Id.* at ¶ 17.) Before the audiogram occurred, however, Plaintiff was transferred to

the Cooper Street Correctional Facility. (*Id.* at ¶ 18.) The incidents giving rise to the instant action occurred at Cooper Street.[2] (*Id.* at ¶ 3.)

Upon his transfer to Cooper Street, Plaintiff informed health services that he was awaiting an audiogram so that he could be provided with a hearing aid. (*Id.* at ¶ 18.) In early June 2012, Plaintiff was seen by Defendant Jurado, a nurse practitioner. (*Id.* at ¶ 19.) Jurado acknowledged Plaintiff's history of hearing loss and told Plaintiff that the audiogram request would have to be resubmitted. (*Id.*) Jurado apparently engaged in rudimentary hearing tests, asking Plaintiff to repeat things she said, but did not administer hearing tests Plaintiff deems medically-appropriate. (*Id.* at ¶ 20.) In a follow-up visit with Jurado on June 20, 2012, Jurado informed Plaintiff that the insurance contractor denied the resubmitted audiogram request. (*Id.* at ¶ 21.)

Plaintiff filed a Step I grievance in effort to obtain a hearing aid and once the time for a response to that grievance lapsed, Plaintiff filed a Step II grievance. (*Id.* at ¶¶ 22-23.) Toward the end of July 2012, a registered nurse interviewed Plaintiff on his Step I grievance and informed Plaintiff that Jurado, not the insurance contractor, denied the request for an audiogram because, according to Jurado's

---

[2] Plaintiff has since been transferred to the Carson City Correctional Facility. (Am. Compl. ¶ 3.)

treatment notes, "inmate does not currently meet the criteria for hearing aids." (*Id.* at ¶ 24.)

On or about August 13, 2012, Defendant Aiken began investigating Plaintiff's Step II grievance. (*Id.* at ¶ 26.) Aiken reviewed Plaintiff's medical records, which documented a long history of hearing loss. (*Id.*) Although "Aiken possessed the authority to grant a Step II grievance where undisputed medical information reveal[ed] that the grievant has been denied adequate medical care[,]" Aiken denied the grievance finding that "Grievant is being evaluate[d], treated, diagnostic testing conducted and monitored by the Medical Provider ('MP')." (*Id.* at ¶ 29.)

Without a hearing aid, Plaintiff's ability to interact with his surroundings is diminished. He fears being "tasered by corrections officers for failing to comply with an order . . ., an order he most likely would not hear because" of his hearing loss and his lack of a corrective device. (*Id.* at ¶ 30.) He also alleges that he "run[s] the risk of being run over by one of the many delivery and maintenance vehicles used within the confines of the prison." (*Id.* at ¶ 31.) The untreated hearing loss also precludes Plaintiff from effectively communicating with prison staff or other inmates. (*Id.* at ¶ 32.)

## B.   Commencement of Civil Action

5

Plaintiff instituted the present action pursuant to 28 U.S.C. § 1983 and Title II of the ADA by filing a complaint with this Court on December 17, 2012.  As relevant to the instant motion, Plaintiff's Amended Complaint contends that Defendant Aiken – who is sued in both her individual and official capacities (Am. Compl. ¶ 5) – was deliberately indifferent to Plaintiff's serious medical needs when she denied his Step II grievance because Plaintiff had a documented history of using a hearing aid.  (*Id.* at ¶ 42.[3])  Plaintiff further alleges that Aiken actively participated in or knowingly acquiesced to Jurado's unconstitutional conduct when she denied his Step II grievance on the basis that Plaintiff was being evaluated, monitored, and treated by the medical provider.  (*Id.* at ¶ 43.)  Lastly, Plaintiff alleges that Aiken's "actions . . . in her intentional fabrication that, 'Grievant is being evaluate[d], treated, diagnostic testing conducted and monitored by the [MP],' in support of her denial of Plaintiff's Step II grievance, constitutes a violation of the . . . ADA . . . by way of the Due Process Clause of the Fourteenth Amendment which incorporates the Eighth Amendment's guarantee against cruel and unusual punishment."  (*Id.* at ¶ 44.)

## C.    Post-Complaint Procedural Matters

---

[3] Plaintiff's Amended Complaint contains two paragraphs labeled as paragraph 41. The Court refers to the second paragraph 41 as 42 because the Amended Complaint continues with paragraph 43.

6

On April 12, 2013, Defendant Aiken filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 arguing that she is entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim because she was not personally involved in the deprivation of Plaintiff's hearing aid and that she is entitled to summary judgment on Plaintiff's Title II claim because Title II does not provide for individual liability.  (ECF No. 18.)  This Court referred the action to Magistrate Judge Komives on April 18, 2013 for all pretrial matters proceedings, including a hearing and determination of all non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 20.)  Plaintiff responded to Aiken's motion on May 28, 2013.  (ECF No. 24.)

Magistrate Judge Komives filed an R&R on July 15, 2013 recommending that the Court grant Aiken's Motion for Summary Judgment for the reasons set forth in her brief.  (ECF No. 30.)  At the conclusion of the R&R, Magistrate Judge Komives advises the parties that they may object to and seek review of the R&R within fourteen (14) days of service upon them.  Plaintiff filed objections to this R&R on August 5, 2013.[4]  (ECF No. 38.)

---

[4] Plaintiff's objections, though filed more than fourteen days after service of the R&R, were timely as the Court granted Plaintiff's motion for enlargement of

7

While the above-described R&R was pending before the Court, Plaintiff sent a letter to the Court seeking clarification of certain docket entries and indicating that although he filed a Rule 56(d) affidavit seeking additional discovery before the Court issued a decision regarding Aiken's summary judgment motion, the affidavit was not addressed in Magistrate Judge Komives's R&R. (ECF No. 25.) Further, on August 5, 2013, Plaintiff sought leave to file an amended complaint, (ECF No. 37), which Magistrate Judge Komives granted on August 8, 2013, (ECF No. 40). As a result of these events, Magistrate Judge Komives filed a Supplemental R&R, also on August 8, 2013, "address[ing] the issues raised by [P]laintiff's letter and amended complaint as relevant to [D]efendant Aiken's motion for summary judgment."

In the Supplemental R&R, Magistrate Judge Komives concludes (1) that Plaintiff did not discharge his burden of showing an entitlement to additional discovery prior to ruling on the pending summary judgment motion, (2) that all of Plaintiff's exhibits were considered prior to the issuance of the initial R&R, and (3) that the allegations contained in the amended complaint do not alter Aiken's entitlement to summary judgment. (ECF No. 39.) Magistrate Judge Komives informs the parties that any objections to the R&R must be filed within fourteen

---

time and extended the due date of the objections to August 12, 2013. (ECF No. 34.)

days.  (*Id.*)  Plaintiff filed objections to the Supplemental R&R on August 21, 2013.  (ECF No. 47.)

## II.    STANDARD OF REVIEW

A party may object to a magistrate judge's non-dispositive orders.  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  The reviewing court must affirm the magistrate judge's ruling unless the objecting party demonstrates that the magistrate judge's ruling is "clearly erroneous" or "contrary to law."  *Id.*  The "clearly erroneous" standard does not empower a reviewing court to reverse a magistrate judge's finding because it would have decided the matter differently.  *See, e.g.*, *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573-74, 105 S. Ct. 1504 (1985).  Instead, the "clearly erroneous" standard is met when despite the existence of evidence to support the finding, the court, upon reviewing the record in its entirety, "is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948).  An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

When objections are filed to a magistrate judge's report and recommendation on a dispositive matter, the Court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or

9

recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  The Court,

however, "is not required to articulate all of the reasons it rejects a party's

objections."  *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001)

(citations omitted).  A party's failure to file objections to certain conclusions of the

report and recommendation waives any further right to appeal on those issues.

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.

1987).  Likewise, the failure to object to certain conclusions in the magistrate

judge's report releases the Court from its duty to independently review those

issues.  *See Thomas v. Arn*, 474 U.S. 140, 149, 106 S. Ct. 466, 472 (1985).

### III.   ANALYSIS

The Court addresses Plaintiff's objections to the July 15, 2013 R&R before

proceeding to Plaintiff's objections to the August 8, 2013 Supplemental R&R.

These objections all pertain to the Magistrate Judge Komives's recommendation

that the Court grant Aiken's Motion for Summary Judgment.

**A.     Objections to July 15, 2013 R&R**

<u>Objection 1</u>

In the R&R, Magistrate Judge Komives recommends that the Court dismiss

Plaintiff's Eighth Amendment deliberate indifference claim against Aiken because

Aiken's only involvement in the denial of Plaintiff's medical care was that she

denied his Step II grievance.  (R&R 5.)  Because "[i]t is well established that a

10

defendant's failure to respond, or an inappropriate response, to a prisoner's grievance is insufficient to hold the defendant personally liable[,]" (*id.* (quoting *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.") (additional quotation omitted)), Magistrate Judge Komives determined that Plaintiff's deliberate indifference claim fails as a matter of law. *See also Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006) (affirming dismissal of claim against defendant who, according to plaintiff, failed to respond appropriately to plaintiff's grievance appeal); *Martin*, 14 F. App'x at 309 (affirming dismissal of claims against a defendant whose only involvement in the matters giving rise to the § 1983 action was his denial of the appeal of the plaintiff-prisoner's grievance); *Shehee v. Luttrell*, 199 F.2d 295, 300 (6th Cir. 1999) (reversing denial of summary judgment to prison officials whose only involvement was the denial of administrative remedies).

Plaintiff objects to Magistrate Judge Komives's conclusion that Plaintiff cannot show that Aiken was personally involved in the denial of his medical care. Plaintiff argues that Aiken had medical records demonstrating that he suffered from hearing loss and that, given her power to rectify the situation when addressing his Step II grievance, her refusal to do so rendered her complicit in the denial of his medical care.

11

In support of his argument, Plaintiff cites *Hill v. Marshall*, 962 F.3d 1209 (6th Cir. 1992).  This case, however, is inapposite.  In *Hill*, the Sixth Circuit permitted a prison official to be held liable in a supervisory capacity for "abandoning the specific duties of his position – reviewing and responding to inmates' complaints about medical needs – in the face of *actual knowledge* of a breakdown in the proper workings of the department."  *Id.* at 1213 (emphasis added).  The defendant "by his own admission, had referred inmates' complaints of not getting medication to the head nurse, the very person whom he knew to be wrongly altering and destroying some of the inmates' prescriptions."  *Id.*  Because the defendant's job was to address prisoners' complaints regarding medical care, his referral of complaints to an individual he knew would not be responsive meant that defendant was derelict in his duties.  The court determined that defendant's failure to perform his job directly resulted in the violation of the prisoner-plaintiff's Eighth Amendment rights.  *Id.*  The court did not hold the defendant liable for the head nurse's misconduct but rather held him accountable for his failure to intervene despite actual knowledge of such misconduct.

Here, unlike in *Hill*, Plaintiff seeks to hold Aiken vicariously responsible for Jurado's conduct.  Plaintiff has not presented evidence that Aiken, who reviewed Plaintiff's grievance, had actual knowledge of Jurado's alleged misconduct in denying Plaintiff an audiogram and hearing aid.  Although Plaintiff alleges that

Aiken's statement in response to his Step II grievance was false (the statement that Plaintiff was receiving treatment, being evaluated, and being monitored), Plaintiff has not presented any evidence or argument showing that Aiken knew or believed that Plaintiff was not receiving adequate medical treatment. Such a failure makes the instant case distinguishable from *Hill* and precludes Plaintiff from stating a valid § 1983 claim against Aiken.

For these reasons, the Court agrees with Magistrate Judge Komives that Plaintiff cannot state a viable cause of action against Aiken on the basis that she denied his Step II grievance. This warrants a ruling in Aiken's favor.

<u>Objection 2</u>

In the R&R, Magistrate Judge Komives concludes that Aiken is entitled to summary judgment on Plaintiff's claim involving Title II of the ADA, which provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority . . . ." *Id.* at § 12132(1).

13

Magistrate Judge Komives correctly notes that the statute, by its very terms, does not apply to individuals but rather only to public entities. *Id.*; *cf. Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) (providing that the proper defendant in a Title II claim is the public entity or an official acting in his or her official capacity) (citation omitted). As such, Plaintiff's ADA claim against Aiken fails as a matter of law to the extent it is brought against Aiken in her individual capacity. As Plaintiff notes in his objections, however, Aiken is named as a defendant in both her individual and official capacities. The R&R did not address Plaintiff's official capacity Title II claim. This is likely because neither Aiken's summary judgment motion nor Plaintiff's response to that motion raised any arguments regarding the official capacity claim. In fact, Plaintiff's response does not discuss the ADA claim at all.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office . . . as such, it is no different from a suit against the State itself." *Moore v. City of Harriman*, 272 F.3d 769, 776 (6th Cir. 2001) (en banc) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989)); *see also Briner v. City of Ontario*, 370 F. App'x 682, 699 (6th Cir. 2010) ("An official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotation marks and alterations omitted). Thus, Plaintiff's ADA claim against Aiken in her

14

official capacity is a claim against the MDOC, the public entity that employs Aiken.

Because Aiken's motion did not include any discussion of the official capacity claim, an Eleventh Amendment sovereign immunity defense was not raised. Even if it an immunity defense was raised, however, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006) (emphasis in original). In *Georgia*, the Supreme Court mandated a procedure for lower courts to follow when confronted with a state's claim of immunity under the Eleventh Amendment in cases involving ADA Title II.[5] *Georgia* instructs lower courts:

> to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.*

---

[5] The Court acknowledges that the State of Michigan did not invoke the Eleventh Amendment. However, because the State could invoke such a defense on appeal, the Court does not believe that it is wise to ignore the issue at this stage of the litigation. *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (citing *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S. Ct. 1347 (1974)).

In his objections, Plaintiff contends that he may pierce any claim of state sovereign immunity the State of Michigan may raise.  Plaintiff explains that he has satisfied the *Georgia* three-step because "Plaintiff's [C]omplaint set[s] forth that [D]efendant Aiken denied him a hearing aid and was deliberate[ly] indifferen[t] to his serious medical needs which is an Eighth Amendment violation.  The Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment."  (Pl.'s Objections 5; *see also* Am. Compl. ¶ 44 ("The actions of . . . Aiken in her intentional fabrication that, "Grievant is being evaluate[d], treated, diagnostic testing conducted and monitored by the Medical Provider . . . ,' in support of her denial of Plaintiff's Step II grievance, constitutes a violation of the [ADA] by way of the Due Process Clause of the Fourteenth Amendment which incorporates the Eighth Amendment's guarantee against cruel and unusual punishment.").)

Based on the allegations in his *pro se* Complaint and Amended Complaint as well as his subsequent filings in this Court, it is clear that Plaintiff relies on the same conduct alleged in support of his Eighth Amendment claim to support the Title II claim.  In essence, Plaintiff relies on a predicate Eighth Amendment violation to demonstrate a Fourteenth Amendment violation and then argues that the Fourteenth Amendment violation supports liability on the Title II claim.  The Court, however, has already determined that Plaintiff's Eighth Amendment claim

16

fails because Aiken's actions in denying Plaintiff's Step II grievance do not constitute deliberate indifference and Plaintiff has presented no evidence that Aiken's (allegedly fabricated) statements were anything other than based on her review of Plaintiff's file. *See supra*.

To the extent Plaintiff suggests that he has alleged conduct that violates Title II but does not violate the Fourteenth Amendment, the Court disagrees. Plaintiff does not allege that Aiken discriminated against him on the basis of his hearing loss nor does he allege any sort of claim sounding in equal protection.

In sum, Plaintiff's allegations that Aiken wrongly denied his Step II grievance are insufficient to find Aiken liable for violating Title II in her official capacity. Accordingly, Aiken is entitled to summary judgment on Plaintiff's Title II claim in both her individual and official capacities.

<u>Objection 3</u>

Plaintiff's third objection to the R&R is that Magistrate Judge Komives erred in issuing the R&R before the close of discovery. Plaintiff indicates that he has not received responses to his discovery responses as discovery was not set to close until September 27, 2013. Lastly, Plaintiff draws the Court's attention to the Rule 56(d) affidavit filed in opposition to Aiken's Motion for Summary Judgment.

The Court finds that these objections lack merit for the reasons set forth in the Supplemental R&R, *see infra*, namely, that Plaintiff's claims against Aiken fail as a matter of law and cannot be saved by facts revealed during discovery.

**B.     Objections to August 8, 2013 Supplemental R&R**

<u>Objection 1</u>

Plaintiff's first objection to the Supplemental R&R is that Magistrate Judge Komives erred in concluding that additional discovery was not warranted prior to issuing the original R&R.  Plaintiff argues that this was error because Plaintiff filed a Rule 56(d) affidavit indicating why he could not obtain information necessary to opposing Aiken's summary judgment motion.

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  The evidence sought, however, must impact the non-movant's ability to defeat summary judgment.  *See, e.g.*, *CenTra, Inc. v. Strin*, 538 F.3d 402, 420 (6th Cir. 2008); *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998).

Magistrate Judge Komives did not err in concluding that Plaintiff's medical records would not alter Aiken's entitlement to summary judgment.  The Court is

18

not persuaded that Plaintiff's medical records would show that Aiken – acting in either her official or individual capacity – violated Title II by denying Plaintiff's Step II grievance.

Objection 2

Plaintiff's second objection is that Magistrate Judge Komives continues to err in concluding that Plaintiff cannot show that Aiken was personally involved in the deprivation of his Eighth Amendment rights. Plaintiff again refers to Aiken's intentional fabrication regarding the care Plaintiff received and argues that this willful deception evidences Aiken's intent to violate Plaintiff's rights.  Because this objection was addressed with respect to the original R&R, *supra*, the Court declines to address it again.

## IV.   SUMMARY AND ORDER

For the reasons set forth herein and in both of Magistrate Judge Komives's R&Rs, the Court concurs in the magistrate judge's findings and conclusions regarding Defendant Aiken's Motion for Summary Judgment.  The Court therefore adopts the R&R with respect to claims brought against Aiken in her individual capacity.

While the Court finds that Magistrate Judge Komives erred in not considering Plaintiff's official capacity claim against Aiken alleging a violation of Title II of the ADA, the Court finds that this claim fails as a matter of law.

19

Accordingly,

**IT IS ORDERED** that Defendant Aiken's Motion for Summary Judgment, (ECF No. 18), is **GRANTED** and Defendant Aiken is dismissed from this action in both her individual and official capacities.


Date:  September 25, 2013                                s/PATRICK J. DUGGAN
                                                          UNITED STATES DISTRICT JUDGE


Copies to:

**Emanuel Coates**, #155262
Carson City Correctional Facility
10274 Boyer Road
Carson City, MI 48811

**Cori E. Barkman, A.A.G.**
**Kandy C. Ronayne, A.A.G.**
**Kevin R. Himebaugh, A.A.G.**
**Magistrate Judge Paul J. Komives**