UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EMANUEL COATES,<br><br>Plaintiff,<br><br>v.<br><br>JEMER JURADO, et al.,<br><br>Defendants. | Case No. 12-15529<br>Honorable Laurie J. Michelson<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [159] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [125]**

For many years, the Michigan Department of Corrections ("MDOC") provided Plaintiff Emanuel Coates with a hearing aid for his left ear during his incarceration. But Coates lost his hearing aid while briefly on parole in 2012. Once he went back to prison that year, he requested an audiogram and a replacement hearing aid. Defendant Nurse Practitioner Jemer Jurado examined Coates and found that his left ear's hearing loss was only moderate and that his right ear was fine. As a result, an agent of Defendant Corizon Health, Inc., a medical services provider for MDOC inmates, denied Coates' requests. Coates maintains that Jurado never actually tested his hearing. Thus, he says that Corizon denied his requests on the basis of Jurado's falsified exam results and Corizon's general cost-reduction policy to refuse treatment to inmates for non-life-threatening issues. So Coates filed this *pro se* action under 42 U.S.C. § 1983 against Jurado and Corizon, claiming that each was deliberately indifferent to his serious medical needs in violation of the Constitution.

Jurado and Corizon jointly moved for summary judgment. (Dkt. 125.) Magistrate Judge Elizabeth Stafford entered a Report and Recommendation to deny the motion (Dkt. 159), and

Defendants objected (Dkt. 161). While the Court is not persuaded by most of Defendants' objections, the Court agrees with Defendants that Coates' claim against Corizon should be dismissed as a matter of law. Therefore, the Court ADOPTS IN PART the Report and Recommendation and GRANTS IN PART and DENIES IN PART the motion for summary judgment.

**I.**

On summary judgment, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party, here Coates. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A.**

Emanuel Coates has been incarcerated by MDOC for most of the time since 1996. (*See* Dkt. 52, Am. Compl. ¶ 3.) MDOC provided Coates with a hearing aid for his left ear after a May 1996 audiogram revealed that he had high frequency sensorineural hearing loss. (Dkt. 151, Pl.'s Resp. Ex. A at 12.) In 1997, MDOC gave Coates another hearing aid after he lost the original. (*Id.* at 2.) Before 2012, the MDOC medical providers who treated Coates never questioned his need for a hearing aid. (*See, e.g.*, *id.* at 5, 12–13.)

While on parole in January 2012, Coates lost his hearing aid before he was incarcerated again in February 2012. (Am. Compl. ¶ 16.) By then, Defendant Corizon Health, Inc. provided healthcare services to inmates in MDOC's custody.

On May 17, 2012, Coates submitted a "kite" requesting an evaluation for a replacement hearing aid. (Dkt. 125, Defs.' Mot. Summ. J. Ex. B, Jurado Aff. ¶ 4; Ex. A, Medical Record ("MR") at 111.) On May 18, 2012, Defendant Nurse Practitioner Jemer Jurado submitted a request for an audiogram on Coates' behalf. (Jurado Aff. ¶ 4; MR at 112–14.) But her request

failed to include Coates' paper records from MDOC, including past audiogram results and recommendations for him to receive a hearing aid. (Pl.'s Resp., Coates Aff. ¶ 11.) Jurado's request also incorrectly stated that Coates' hearing loss dated to 2002, not 1996. (Coates Aff. ¶ 11; MR at 113.)

Dr. Harriet Squire reviewed Jurado's request "and determined that more information was needed before a determination for a hearing aid could be made." (Defs.' Mot. Ex. C, Squire Aff. ¶ 8.) Accordingly, she "recommended an alternative treatment plan" and "directed [Jurado] to submit a new request for an audiogram that included a focused physical examination of [Coates'] ears to rule out obstruction, infection, etc." (Squire Aff. ¶ 8; MR at 121–22.)

In response, Jurado says that she "thoroughly evaluated [Coates'] ears and hearing" on June 13, 2012. (Jurado Aff. ¶ 6; MR at 123–25.) According to Jurado's notes, Coates' left ear had "muffled and unclear hearing loss that began 10 Year(s) ago," was "progressive with a noticed decline in hearing for 10 years," and was "moderate" and "worsening." (MR at 123.) (*Id.*) Jurado says that she used a Weber Test to conclude that "the sound was louder in [Coates'] right ear" and that using a Rinne Test, she determined that "air conduct was greater than the bone conduction in both [ears]." (Jurado Aff. ¶ 6; MR at 124.) Overall, she said, "Although sound was heard in both ears, it was diminished in the left ear." (Jurado Aff. ¶ 6.) Moreover, she said, "An examination of [Coates'] right ear was unremarkable, and his hearing was normal to a whispered voice and normal to finger rub." (*Id.* at ¶ 6.)

But Coates says Jurado never performed these tests. (Coates Aff. ¶ 12.) Rather, she sat across the room from Coates, asked him questions—many of which she had to repeat because Coates could not hear her, and never approached him at the exam table. (*Id.*) He also says that

another nurse told him Corizon would deny his requests due to its cost-reduction policy of refusing treatment outside of life-threatening situations. (*Id*. at ¶ 20.)

After the June 13, 2012 visit with Coates, Jurado submitted a new request for an audiogram. (Jurado Aff. ¶ 8; MR at 128.) Based on that information, Dr. Squire determined that neither an audiogram nor a hearing aid were necessary because Jurado's exam revealed that Coates "can perceive whispered voice and finger rub on the right" ear, so "he does not meet the criteria for hearing aids." (*See* Squire Aff. ¶ 11; MR at 129.) According to Dr. Squire, "With good hearing in one ear, the additional benefit from a hearing aid for the other ear is not considered significant." (Squire Aff. ¶ 11.)

**B.**

Coates filed this action on December 17, 2012. (Dkt. 1.) His Amended Complaint (Dkt. 52) asserts that by failing to provide him with an audiogram and hearing aid, Jurado and Corizon were each deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (as incorporated against the States by the Fourteenth). (Am. Compl. ¶¶ 35, 45.) Defendants filed a motion for summary judgment on January 2, 2015. (Dkt. 125, Defs.' Mot. Summ. J.) On August 13, 2015, the Magistrate Judge issued a report and recommendation to deny that motion. (Dkt. 159, R&R.)

The Magistrate Judge first found that "Coates's hearing loss is without question a serious medical need because it was diagnosed by an audiologist and MDOC medical providers found that his hearing loss required medical treatment." (R&R at 11–12.) The Magistrate Judge cited Coates' MDOC records predating his treatment by Corizon providers, some of which noted his hearing loss and need for a hearing aid. (R&R at 11–12.) The Magistrate Judge also cited various affidavits, which as discussed further below, speak to the physical risks that Coates faced as an

inmate as a result of his hearing loss—for example, a corrections officer threw Coates to the ground after he did not hear an order to disperse. (R&R at 12–13.)

Regarding Coates' claim against Jurado, the Magistrate Judge found that because the parties dispute whether Jurado falsified her report so that Coates' audiogram request would be denied, a genuine issue of material fact exists. (R&R at 15.) Specifically, the Magistrate Judge found, "If Jurado falsified her report, that would constitute a reckless disregard of a substantial risk of serious harm to Coates." (*Id*.)

Finally, as for Coates' claim against Corizon, the Magistrate Judge found that a "jury could infer . . . that Corizon has a custom, policy or practice of denying audiology services in order to reduce expenses, and a jury could also find that that custom or practice was the 'moving force' behind Coates's request for an audiogram being repeatedly denied." (R&R at 19.) The Magistrate Judge cited Coates' allegation in his affidavit that some unidentified nurse told him that Corizon's cost reduction policy of denying audiology services in non-life threatening situations would cause his request for an audiogram to be denied. (R&R at 17.) The Magistrate Judge also found further support for a custom or practice because MDOC had "routinely provided Coates with audiograms and hearing aids until Corizon took over MDOC health services," at which point "no Corizon medical provider would approve Coates's audiogram request despite the past findings that he had moderate to severe hearing loss bilaterally." (R&R at 19.)

Defendants filed objections to the R&R on August 27, 2015 (Dkt. 161, Obj.), and Coates responded on September 28, 2015 (Dkt. 165).

**II.**

**A.**

This Court conducts a *de novo* review of those portions of the Report and Recommendation to which Defendants have objected. 28 U.S.C. § 636(b). The Court need not perform a *de novo* review of the Report's findings to which Defendants have not objected. *See Schaefer v. Modelski*, No. 13-CV-13669, 2014 WL 3573270, at *1 (E.D. Mich. July 21, 2014) ("Although a court must review timely objections to a magistrate judge's report and recommendation, a court may adopt, reject, or amend the portions of a report and recommendation to which no party properly objects." (citing Fed. R. Civ. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 150 (1985))); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made." (citing *Arn*, 474 U.S. at 149–52)).

**B.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) ("The mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.”).

**III.**

Coates’ claims arise under 42 U.S.C. § 1983 and the Eighth Amendment by way of the Fourteenth Amendment’s Due Process Clause. “The Eighth Amendment forbids prison officials from ‘unnecessarily and wantonly inflicting pain’ on an inmate by acting with ‘deliberate indifference’ toward the inmate’s serious medical needs.” *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An Eighth Amendment claim based on deliberate indifference to serious medical needs has objective and subjective components. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). “The objective component requires the existence of a ‘sufficiently serious’ medical need.” *Blackmore*, 390 F.3d at 895. “The subjective component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care.” *Id.* (internal quotation marks omitted).

Furthermore, “[a]s a private entity contracted to perform the traditional state function of prison medical care, Corizon may be sued for constitutional violations.” *Baker v. Stevenson*, 605 F. App’x 514, 520 (6th Cir. 2015). “Corizon cannot be held liable on a theory of *respondeat superior*, but it can be held liable on the basis of a corporate policy, practice, or custom that causes the plaintiff’s injury.” *Id.*

**A.**

Defendants’ first object that “the R&R incorrectly attempts to attribute the acts or omissions of Dr. Squire to Corizon Defendants.” (Obj. at 2.) In recommending that Corizon’s motion be denied, the Magistrate Judge indeed relied in passing on the conduct of Dr. Squire, a

Corizon employee who is not a party in this case. (*See* R&R at 18 (noting that when Dr. Squire denied Coates' request for an audiogram, she "failed to consider without any apparent justification" his prior medical records demonstrating his hearing loss).) But the Court need not address whether this was erroneous. As discussed below, on the basis of Defendants' next objection, the Court finds that Coates' claim against Corizon should be dismissed as a matter of law.

**B.**

Defendants' next objection is that the Magistrate Judge relied on inadmissible hearsay to find that a jury could infer that Corizon has a custom, policy, or practice of denying audiology services. (Obj. at 4.) Specifically, Coates stated in his affidavit:

> During a routine health care visit, I was told by a Nurse that I was not going to get a hearing aid. That Corizon had a policy of denying medical needs if they were not life threatening in order to contain cost. The health care visit occurred at the Carson City Correctional Facility, where I am currently incarcerated.

(Coats Aff. ¶ 20.) The Magistrate Judge noted that the nurse's statement would be admissible under Federal Rule of Evidence 801(d)(2)(D), which provides that statements "offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" are not hearsay. (R&R at 17.) The Court disagrees.

"The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citation omitted). "However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Id.* Thus, because "evidence submitted in opposition to a motion for summary judgment must be admissible . . . hearsay evidence must be disregarded." *Id.* (internal quotation

marks and citations omitted); *see also North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir.1997) ("[T]he testimony of Chaffee is inadmissible hearsay and therefore cannot defeat a motion for summary judgment."). When it comes to using the statements of party opponents to defeat summary judgment, "[T]he party arguing for admission bears the burden of establishing the proper foundation for the admissibility of the statements." *Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 303 (6th Cir. 2002) (citation omitted).

Coates has not carried his burden of showing that, at trial, he can cure the hearsay nature of the statement by the "nurse" who spoke of Corizon's policy. Nothing in the record suggests that the nurse was an agent or employee of Corizon. *See* Fed. R. Evid. 801(d)(2)(D). Indeed, as Defendants point out, Sabrina Aiken—another nurse that was a defendant until Coates' claim against her was dismissed (*See* Dkt. 59)—was actually employed by MDOC, not by Corizon. (*See* Dkt. 18 Aiken's Mot. Summ. J., Ex. 2 Aiken Aff. ¶ 1.) And even if the nurse who told Coates about Corizon's cost reduction policy was Corizon's employee or agent, nothing in the record suggests that she was authorized to speak for Corizon about the policy. *See Liadis*, 47 F. App'x at 303 ("Statements by employees are outside of the scope of an employee's employment, and therefore not subject to the party-admission rule, when they concern decisionmaking processes into which the employee has no input, or decisions to which they were not a party."). Thus, without more from Coates, the Court cannot conclude that the nurse's statement would be admissible evidence at trial, and the statement therefore must be "disregarded" at the summary judgment stage. *See Alexander*, 576 F.3d at 558.

The Court sees no other evidence from which a jury could infer that Corizon had a custom, policy, or practice that was the moving force behind any deprivation to Coates' Constitutional rights. Coates attached to his response a December 2014 letter from a law firm

detailing various alleged MDOC deficiencies in its treatment of hearing impaired prisoners and threatening litigation, but this letter does not specifically address Corizon's healthcare services. (*See* Pl.'s Resp. Ex J, Covington & Burling LLP Letter.) Moreover, like the nurse's statement, the Court sees no avenue for this letter to fall within a hearsay exclusion or exception.

Aside from the inadmissible hearsay evidence, the thrust of Coates' claim is that Jurado specifically was deliberately indifferent to his serious medical needs by falsifying an exam. Nothing surrounding her alleged conduct suggests that it stemmed from a broader policy at Corizon. Indeed, when Coates first requested an audiogram in May 2012, Jurado did not deny Coates' request outright. Instead, she submitted a request for an audiogram on his behalf. (Jurado Aff. ¶ 4; MR at 112–14.) Likewise, once Dr. Squire received that request, her initial response also was not outright denial. She instead requested more information and further testing. (Defs.' Mot. Ex. C, Squire Aff. ¶ 8.) And well after Dr. Squire's ultimate decision, another physician, Dr. Daniel Carrel, submitted yet another request on Coates' behalf for an audiogram, though that too was ultimately denied. (Coates Aff. ¶ 25.)

Thus, as a whole, the record suggests that Corizon had a procedure that gave consideration to Coates' requests for an audiogram and hearing aid. Even accepting as true Coates' claim that Jurado falsified an exam to facilitate the denial of his requests, her isolated conduct cannot support the inference of a custom, policy or practice at Corizon. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005) ("The danger in appellants' argument is that they are attempting to infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard. This path to

municipal liability has been forbidden by the Supreme Court."). Accordingly, the Court will dismiss Coates' claim against Corizon.

**C.**

Defendants next object to the Magistrate Judge's finding that a genuine issue of material fact surrounds whether Jurado falsified exam results so that Coates' requests for an audiogram and hearing aid would be denied. (Obj. at 8.) In particular, Defendants assert that "Jurado submitted her first consultation request before preparing the alleged 'false' examination report. If she did not want Plaintiff to have an audiology exam, she would not have submitted the initial request at all. The R&R erred by failing to consider this fact." (Obj. at 8.) To Jurado's credit, it seems doubtful that she would bother to initially recommend an audiogram only to later falsify an exam record to prevent Coates from obtaining one. But this goes to the weight of the evidence, which is not within the Court's province to consider. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

This issue is resolved by a straightforward application of a well-settled summary judgment principle: the Court must view the evidence in the light most favorable to Coates, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While Jurado says that she thoroughly examined Coates on June 13, 2012, Coates has maintained throughout the litigation that she never actually tested his hearing and that the results she submitted to Dr. Squire were therefore false. (Coates Aff. ¶ 12; Compl. at 5–6; Am. Compl. ¶ 20.) And medical evidence predating that exam is at the very least inconsistent with Jurado's conclusions that Coates suffered only moderate hearing loss in one ear. (*See* Dkt. 151, Pl's. Resp. Ex At at 5, 12–13.) Thus, contrary to Defendants' assertion, this is not a case where Coates'

position is "so blatantly contradicted by the record that no reasonable jury could believe" him. (Obj. at 9 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

**D.**

Defendants also object that the Magistrate Judge did not consider their argument, presented in their reply brief, that a September 2014 consultation request precludes any finding that Jurado's alleged falsification of records *caused* a violation of Coates' Constitutional rights. (Obj. at 10.)

In their reply, Defendants argued that evidence Coates submitted with his response brief undermined his claims against Jurado. (*See* Dkt. 153, Defs.' Repl. at 5–6.) Specifically, Coates attached to his response the results of a May 2014 audiogram. (Pl.'s Resp. Ex. K.) He also attached a record showing that following that test, his request for an off-site audiogram was denied on September 25, 2014. (Pl.'s Resp. Ex. O.) Thus, Defendants' reply argued that even if Jurado had falsified records from the June 2012 exam, the outcome would have been the same: Coates would not have received a hearing aid, so Jurado could not have caused any deprivation to Coates' Constitutional rights. (Defs' Repl. at 6.) It is not clear from Defendants' briefs why exactly the 2014 records would preclude as a matter law any possibility that Jurado caused a deprivation to Coates' rights by falsifying exam results in 2012. Nevertheless, instead of considering this line of argument, the R&R incorrectly noted that Defendants did not file a reply brief. (R&R at 6.)

"[A] public official is liable under § 1983 only if [she] causes the plaintiff to be subjected to a deprivation of his constitutional rights." *See McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) (quoting *Baker v. McCollan*, 443 U.S. 137, 142 (1979)). "Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim." *Powers v. Hamilton Cnty.*

*Pub. Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). Thus, the Court must consider whether Jurado's alleged falsification was both the cause in fact and proximate cause of Coates' denial of an audiogram consultation and hearing aid. *See id.*

"Conduct is the cause in fact of a particular result if the result would not have occurred but for the conduct. Similarly, if the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result." *Id.* (quoting *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir.1992). Assuming, as the Court must, that Jurado falsified the June 2012 exam results, a reasonable jury could undoubtedly find that her actions caused Dr. Squire in June 2012 to deny Coates' request for an audiogram and hearing aid. To reach her determination, Dr. Squire specifically relied on the results of Jurado's exam. (Squire Aff. ¶ 11.)

As for the subsequent September 2014 audiogram denial, the record provides little explanation for why this request was denied or who even denied it. The denial itself simply says, "This request was denied on 9/25/14." (Dkt. 151-1, Pl.'s Resp. Ex. A at 3.)

But a reasonable jury could nonetheless find that Jurado's June 2012 conduct still caused the September 2014 denial. According to Dr. Erin Orlebeke, who reviewed Coates' medical records, "The request was deferred and an alternative treatment plan was given because *the evidence showed there was no medical necessity for an off-site audiology examination*. Mr. Coates did not have a medical need based on his ability to hear his providers in a quiet room." (Defs. Reply. Ex. A, 2d Orlebeke Aff. ¶ 6 (emphasis added).) Dr. Orlebeke's statement permits the inference that Jurado's June 2012 conduct caused the September 25 denial because she suggests that the denial was based on the evidence in Coates' records. And, although then two years old, Jurado's June 2012 exam was still among the primary evidence at Corizon's disposal concerning Coates' hearing loss in September 2014. The only other test after the June 2012 exam

appears to have been the May 2014 audiogram. But the May 2014 results do not make a strong case that an off-site audiogram by an audiologist was unnecessary. (Dkt. 151, Pl.'s Resp. Ex. A at 49.) A provider would later note that the test showed that "loss in decibels ranged from 35 . . . to 85 decibels." (Dkt. 151-1, Pl.'s Reps. Ex. A at 2.) And while Dr. Orlebeke characterized that as "moderate hearing loss," she even implicitly called the test's reliability into question by noting that "the audiogram was administrated by a nurse and not an audiologist." (Defs.' Repl. Ex. 1, 2nd Orlebeke Aff. ¶ 4.) Thus, if the September 2014 denial was based on evidence in Coates' medical record, it was likely at least in part based on Jurado's June 2012 exam, which Coates maintains was falsified. In short, on this record, a genuine issue of material fact remains as to whether Jurado's June 2012 conduct caused any deprivation to Coates' Constitutional rights by contributing to Corizon's continued decision not to provide Coates with a replacement hearing aid.

The same goes for proximate cause. "[C]ourts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct." *Powers*, 501 F.3d at 609. It is reasonably foreseeable that falsified exam results downplaying Coates' hearing loss could have resulted in his serious medical need going untreated.

Thus, even though the R&R did not consider Defendants' reply arguments concerning Coates' 2014 medical history, on *de novo* review, this Court finds the same result: a genuine issue of material fact exists concerning whether Jurado caused a deprivation to Coates' Constitutional rights.

**E.**

Defendants next object that the Magistrate Judge's failure to consider the reply brief led to two erroneous conclusions. (Obj. at 12.) First, without factoring in the May 2014 audiogram or later September 2014 audiogram denial, the R&R found "Defendants provide no explanation for how Coates's sensorineural hearing loss could have improved since 2008 when the medical evidence indicates that his hearing loss worsened over time." (R&R at 12.) Second, the R&R noted, "there is no indication that any additional hearing tests were provided after June 2012." (R&R at 18.) The gist of Defendants' objection is that "[t]he 2014 audiogram was additional evidence to support Jurado's conclusion of only moderate hearing loss," further undermining Coates' claim against Jurado. (Obj. at 12.)

Because of the record of the May 2014 audiogram Coates submitted with his response, it was erroneous for the Magistrate Judge to find that no other tests were performed after Jurado's in June 2012. But the 2014 audiogram still does not explain why Coates' hearing loss was no longer significant enough to qualify him for a hearing aid or further testing. Moreover, if the May 2014 audiogram indeed supports the conclusion that Coates' hearing loss was not serious, that goes to the weight of the evidence, as his prior MDOC records suggest otherwise. In any event, the 2014 audiogram does not alter Coates' key allegation that the Court must construe in his favor—that Jurado falsified exam results. The Court agrees with the Magistrate Judge that in these circumstances this alleged falsification of records is sufficient to create a genuine issue of material fact as to whether Jurado was deliberately indifferent to Coates' serious medical needs.

**F.**

Defendants finally object to the Magistrate Judge's finding that Coates suffered an objectively serious medical need as a result of his hearing loss. (Obj. at 13–14.) Courts have

recognized that "[s]ubstantial hearing loss that can be remedied by a hearing aid can present an objectively serious medical need." *See Gilmore v. Hodges*, 738 F.3d 266, 275 (11th Cir. 2013) (noting that while "precious little caselaw" addresses the issue, three other circuits "have recognized that severe hearing loss may be a serious medical need for the purpose of the Eighth or Fourteenth Amendments"). Nonetheless, Defendants assert that the "R&R failed to consider evidence showing that Plaintiff could carry on normal conversations and hear and follow directions without a hearing aid." (Obj. at 13.)

Defendants are correct that some nurses or physicians who treated Coates reported that he seemed to have no trouble hearing them during examinations. For instance, one noted based on a March 7, 2013 exam that Coates "answered all questions spoken in a normal tone." (Orlebeke Aff. ¶ 7.) But the Court agrees with the Magistrate Judge's conclusion on this issue: "Coates's ability to communicate effectively during health care visits in a quiet room in close proximity to the provider does not establish as a matter of law that his hearing impairment is not a serious medical need." (R&R at 12.)

Indeed, several medical records predating Jurado's June 2012 visit with Coates support a finding that his hearing loss is a serious medical need. For instance, results from a December 2007 audiogram showed "serious hearing loss (60 dB) lt ear 500-4000 Hz; mild loss (40 bB) rt ear 500-1000 Hz and serious loss (60 bD) rt ear 2000-4000 Hz. Not wearing hearing aid at time of audiogram." (*Id.* at 12.) After another audiogram in February 2008, an audiologist concluded that Coates' hearing had worsened to the point that his current hearing aid "no longer provides enough power." (*Id.* at 13–15.)

Several affidavits from fellow inmates further underscore the seriousness of Coates' medical need, explaining the risks that Coates faces in prison as a result of his hearing loss. In

2008, Coates did not hear a dispersion order from guards, leading several corrections officers to throw him to the ground and handcuff him. (Pl.'s Resp., Dudley Aff. ¶ 3.) In December 2014, Coates hurt his wrist when a stack of weights fell on him after he failed to hear another inmate's warning. (Pl.'s Resp., Greer Aff. ¶ 2.) Another inmate has several times had to pull Coates out of the way of maintenance vehicles he did not hear approaching. (Pl.'s Resp., Wigfall Aff. ¶ 3.) And other inmates confirm that Coates has difficulty hearing announcements over the prison's public address system. (Pl.'s Resp., Clark Aff. ¶ 4.; Sarkisoff Aff. ¶ 3.)

These affidavits—coupled with Coates' medical history dating to his first hearing aid in 1996—are enough to create a genuine issue of material fact concerning whether Coates' hearing loss was an objectively serious medical need. Though the R&R did not discuss the May 2014 audiogram, that does not change the outcome. The Court is not in a position to say that test forecloses any genuine issue of material fact regarding whether Coates had a serious medical problem.

**IV.**

For the reasons stated, a genuine issue of material fact exists as to whether Coates had an objectively serious medical need and whether Jurado was deliberately indifferent to that need in violation of the Eighth Amendment, as incorporated into the Fourteenth Amendment's Due Process Clause. Thus, Coates' claim against Jurado survives summary judgment. But his claim against Corizon does not, as no admissible evidence supports the conclusion that any Corizon policy, practice, or custom was the moving force behind the alleged deprivation of Coates' Constitutional rights. Therefore, the Court ADOPTS IN PART the Report and Recommendation and GRANTS IN PART and DENIES IN PART the motion for summary judgment. Defendant Corizon is DISMISSED from this action.

Finally, Coates has filed several prior motions for appointment of counsel (Dkts. 3, 27, 44, 119.) The Magistrate Judge has noted that Coates' request could be reconsidered if he survived summary judgment. (Dkt. 133 at 13.) Accordingly, now that he has, the Court will appoint counsel for Coates, conditioned on the Court's success in enlisting *pro bono* representation.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 30, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson